23-6307. Ms. Drake. Thank you, Your Honor. Good morning, and may it please the Court and counsel. The task at hand requires us to discuss the legal intricacies of this case dispassionately, but I do wish to acknowledge that the facts here are deeply affecting, and of course nothing I say this morning is intended to diminish or make light of the seriousness of this case. The government's case, of course, consisted primarily of the testimony of James and Jarrell, both of whom accused the defendant of killing three people. There's obviously no doubt about the cause or the manner of death, but there is doubt—considerable doubt, according to the defense—about who was the killer. According to the defense, James and Jarrell blamed the defendant to save themselves. And so on the issues that mattered most in this case reduced to a credibility contest. Were James and Jarrell telling the truth? And as between the two brothers, James appeared far more credible. He did not orchestrate the drug deal. In fact, according to him, he didn't even want to be there. He had nothing to do with the dismemberment, nothing to do with the van or the baby. But the defense wanted to present evidence that painted a completely different picture. James Brady's grand jury testimony was that James gave him a kilogram of cocaine, a debit card belonging to Nicole, and either an M or an N pendant. In other words, according to the defense, James stole from the victims, and he sought to profit from their murders. James, therefore, was not the hapless bystander he claimed to be. He was going to capitalize on the victims' deaths. Respectfully, the district court erred by mechanistically applying Rule 804b3 to exclude James Brady's grand jury testimony. And in doing so, the court undermined the defendant's constitutional right to present a complete defense by impugning the credibility of one of the government's key witnesses. The analysis under Rule 804b3 is two-pronged. The first prong asks whether the statement at issue was sufficiently against the declarant's penal interest that a reasonable person—it's an objective test—in the declarant's position would not have made the statement unless believing it were true. No reasonable person admits to possessing a kilogram of cocaine. That is inculpatory, incriminating, full stop. No reasonable person admits to possessing debit cards that do not belong to the giver. The first prong of the analysis under 804b3 is easily satisfied. The second prong asks whether the declarant's statement was supported by corroborating circumstances that clearly indicate its trustworthiness. And here, that prong is satisfied as well. James Brady said that the drugs were wrapped in a possibly Spanish-language newspaper. Now, of course, as someone who doesn't speak Spanish, he couldn't say with certainty what language was on the newspaper, but in putting to him, it was possibly Spanish-language newspaper. The drugs that were found in the deceased's hotel room were likewise wrapped in Spanish-language newspaper, and this is a fact that was never reported by the news media to the public. We also know that Nicole had a penchant for wearing N pendants. She was found with an N pendant at the time of her death. And if it was an M pendant, then one of the victims was named Miguel. And one of the debit cards was made out to Nicole, as one of the victims was named Nicole. So here again, the second prong, under 804b3, is comfortably satisfied. Now, in addition to ruling that the evidence was inadmissible under 804b3, the District Court also excluded the evidence under Rule 403. According to the District Court, there was a risk of creating a trial within a trial if James Brady's grand jury testimony were admitted, because then it would afford the government an opportunity to introduce evidence contesting that. But the problem, respectfully, with excluding the evidence under 403 is that the government does not have unfettered authority to admit any evidence it wants in impeachment. The court always retains its gatekeeping function. If the government wanted to impeach Brady with evidence of a prior conviction, Rule 609 would have allowed them to admit the fact of the prior conviction, and that could have been done by introducing the criminal judgment. If the government wanted to go further and impeach him with the underlying circumstances to augment the fact of those convictions, that triggers Rule 806. The scope of further impeachment is discretionary with the District Court. Now, one wonders if the government truly would have embarked on this, because all of his prior convictions were for, essentially, larceny-related things. May I ask a question going back to the Rule 804 issue? And I wonder if this is really genuinely a statement against penal interests in the way that you describe, because as the District Court noted, he was in a position when he made those statements of trying to cooperate as to the offenses that you described by providing information, testimony regarding much more serious offenses, murder and so on. And I wonder if you might not be able to help me assess whether that is a way of looking at the first prong of 804, the statement against penal interests. I'll certainly try. I think we have to sort of break this into, this part of the analysis into some component parts. The first is, it's not a question of what James Brady himself was thinking at the time, because the standard, as I said, under the Rule is one of the objectives of what would a reasonable person have understood in that situation. So that's my first point. My second point is, and this is, again, breaking it into component parts, admitting that you are in possession of a kilogram of cocaine is against penal interests, period. I mean, it's impossible to argue otherwise. And this then brings Your Honor's question into play, which is, what effect does the fact that he made this testimony, gave this testimony, well under oath, which is a further indication of its truthfulness, but pursuant to a proffer agreement? My take on the proffer agreement is, James Brady's proffer agreement, just like any proffer agreement, was not ironclad. There is no proffer agreement, certainly not his, that gives you unfettered authority to say anything that you want and get immunized as a result. It only matters if you're telling the truth. The proffer agreement supports our argument because it incentivizes him to tell the truth. If he's not telling the truth, then that statement could be admitted against him in his own criminal prosecution. And as it stands, this is not a hypothetical because, in fact, the government has refused to immunize him and refused to honor the promises made in the proffer agreement because, according to them— I'm sorry. If he doesn't tell the truth, they could prosecute him for that, pursuant to the proffer agreement? If he's not telling the truth, then that statement could be admissible, were he to be— If he testified. If he testified, right. That's a very unusual circumstance, at least here, where he has made very clear that he won't testify. After the fact, yes. But at the time he is making these statements, at the time the statements are made by the declarant, they're both against penal interest and the proffer provides an added guarantee that he's telling the truth, in addition to the fact that he was doing it under oath, because if he's not testifying truthfully, then he's exposing himself to considerable criminal liability. All right. So, you've reserved some time for rebuttal. We'll hear from the government. Thank you. Good morning. May I please the Court? Katherine Gregory, Representative of the United States. I'd like to start with Mr. Brady's testimony and acknowledge that the district court's concern here in exercising its discretion was not just the reasonable person having made it under—against his penal interest, but also that there was no corroborating circumstances as to the truth of the statement itself and, in fact, that there was directly contradicting evidence in the record. And I'd like to direct the Court's attention to pages 86 to 88 of the record, where the and I'm paraphrasing, but Judge Wolford wrote that the portions of Brady's statement the defense is not seeking to admit, the portions of his testimony that they were not interested in introducing, were entirely inconsistent with the evidence in the record, severely undercutting any inference of trustworthiness on Brady's part. And the district court went through several of these examples, chief among them being that Brady claimed that Reed told him that Nicole had been raped. But the district court noted that there was no evidence, no medical evidence, no forensic testimony that supported this. And, in fact, when defense counsel was given the opportunity to pursue this line of questioning directly towards Mr. Reed, defense counsel declined to do so. Moreover, Brady claimed that Reed told him the murders had occurred at an address where they had not occurred, that Nicole was related to someone that Reed had met in prison, and there was no evidence of that. So the district court noted that none of these statements were consistent in any way with the evidence at trial or were directly contradicted by the evidence at trial. So when the district court was considering Brady's testimony as a whole, Judge Wolford was looking at not only was there not corroborating evidence for the portions that talked about the pendant or the possibly being wrapped in newspaper, the drugs being wrapped in newspaper, but also that these other portions of the testimony lacked trustworthiness. And, therefore, that was of major consideration by the district court. Mr. Wilson has somewhat disputed the court's rule for a pre-conclusion about the risk of Can you go back a little bit? You heard my questions to your friend on the other side. Are, at least as I understand it, the grand jury testimony, but maybe it's proper statements, are those not statements against penal interest? In this case, the government argued that they were not, and the district court agreed on this point to a certain extent that because he was testifying before the grand jury as part of a proper agreement, I think on page 85 of Judge Wolford's decision in the record, she says, with some exceptions, none of his statements could be directly used against him in subsequent criminal proceedings. So that was certainly relevant to her analysis. When you say as part of a proper agreement, so the proper agreement required him to testify before the grand jury? What does that mean? I don't have the agreement before me, and I don't want to speculate, but I would be happy to submit something afterwards. Because that doesn't make sense to me. So a proper agreement is meant to protect both the government and the defendant, and it's not usually, but maybe I'm missing something, an agreement that requires the target to testify before a grand jury. I don't believe this one did, but again, I don't have it in front of me, and I don't want to say something. No, I'm just a little confused right now. Generally, that's correct. I believe that's what happened here, but I'm just going to be extra cautious not having it in front of me. But I don't think that the Court even needs to really dive deeply into that Part A of 804b3, because again, there were no corroborating circumstances clearly indicating trustworthiness of the statement, which is the other half of that consideration. And then if we jump to the end of this Court's analysis, the standard of procedure is abuse of discretion. So even if this were a somewhat closer call than the government believes, this Court does not generally disturb those rulings unless they are manifestly erroneous, and the government submits that there's no manifest error in the District Court's decision here. It was a very well-reasoned decision, an appropriate exercise of discretion, and moreover, any error, if there was one, was harmless. The District Court, in its denying of Rule 33 and 29 motions, summarized much better than I can all of the government's evidence at pages 814 to 117 of the record, going over the video surveillance that captured much of Mr. Wilson's activities that evening, including the destruction of the van, the cell phone evidence, the other witnesses beyond Mr. Cobb and Mr. Reed that testified in this case, the tracking of Mr. Wilson's movements that evening. The evidence in this case was overwhelming, and if we keep in mind what exactly of Mr. Brady's testimony the government, or excuse me, the defense wanted to introduce, it was essentially three things, that Brady had known Reed since they were children, which contradicted Reed's testimony that they had met in prison, okay, that Brady had bought drugs from Reed in September of 2019, again, the government submits that as an ancillary fact, and then But none of that matches up with the evidence that was presented at trial. There's no indication, as the District Court noted in its decision, that debit cards were missing from Nicole's body, there's no indication that she was missing jewelry, and again, that there was that kind of incongruence between what Brady claimed that Reed told him or told him about the drugs, and then what the drugs actually looked like at the scene. So again, looking at the standard of review here, the government submits that there was no abuse of discretion in the District Court's well-recent decision to exclude this testimony, whether on 804B3, 403, or a combination thereof on those grounds. Thank you. Counsel? Thank you. We certainly acknowledge that there was not perfect congruency between all of what James Brady said and the evidence that the government had, but there never is, and that is not the standard for whether essentially what this was, is jailhouse snitch testimony is admissible. We certainly don't require that of the government when it offers that kind of testimony. Instead, that's just fodder for cross-examination, right? All these arguments that the government wants to make about, well, she was wearing an N pendant, so why would there be another N pendant, go to the weight, not to the admissibility of the jury. These are questions of fact that, respectfully, the District Court should not have removed from the jury's consideration. And in fact, the irony of this case is that because the government claimed an unfettered authority to impeach James Brady, which the District Court appeared to be willing to indulge in its 403 ruling, the defendant was denied the opportunity to impeach one of the government's two key witnesses. But you wanted to bring in or introduce specific testimony, as the government said, and she cited three particular areas. Is that right? That's the first question. Yes. So on page 74 of our appendix, the Court walks through the evidence that Mr. Wilson wanted introduced. Included among that is the evidence that I've mentioned here to the Court this morning, which is really key, and our position is inculpatory and corroborated. The kilogram of cocaine, the debit card belonging to Nicole, and the jewelry and the pendant in the nature of either an N or an M. And those were the victims in this case. Thank you. Thank you very much. Do you have the proffer agreement that we were discussing earlier? I do not have it. I didn't represent Mr. Wilson, but perhaps we can work together to provide something to the Court. That would be helpful if you could do that by the end of this week. Yes, sir. Thank you. We'll reserve the decision of the argument next.